**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERTILUS FRANCISCO, | No. 4:26-CV-01254 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY/IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | |
| Respondents. | |

**MEMORANDUM OPINION**

**MAY 27, 2026**

## I.   BACKGROUND

Gertilus Francisco, currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), has filed this 28 U.S.C. § 2241 petition seeking his release from ICE custody.[1] Francisco is currently detained at the Pike County Correctional Facility located within the Middle District of Pennsylvania.[2]

Francisco, a citizen and native of the Republic of Haiti, entered the United States of America on August 1, 2024, and was initially paroled into the country.[3] On

---

[1]   Doc. 1.
[2]   *Id.* at 1.
[3]   Doc. 5-2 at 2, 4.

February 19, 2026, Francisco was arrested by ICE outside of his home, and he has remained in ICE custody since that date.[4]

In May of 2026, Francisco filed this *pro se* § 2241 petition seeking release from custody or a bond hearing, asserting that his continued detention without a bond hearing violates his constitutional rights.[5] Respondents contend that, because Francisco was previously granted parole, he is considered an arriving alien subject to mandatory detention pursuant to 8 U.S.C. § 1225(b).[6] Upon consideration of the arguments, for the reasons discussed below, the petition will be granted.

## II.    DISCUSSION

### A.    Detention

Francisco brings his claims pursuant to 28 U.S.C. § 2241, which provides, as relevant here, that it applies to any individual who "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States."[7] As the Supreme Court of the United States has emphasized, when ICE detainees challenge "their confinement" pending removal, "their claims fall within the 'core' of the writ of habeas corpus and thus

---

[4]    *Id.* at 3; Doc. 1 at 7.
[5]    *See* Doc. 1.
[6]    Doc. 5 at 13-18.
[7]    28 U.S.C. § 2241(c)(2).

must be brought in" a 28 U.S.C. § 2241 petition.[8] Francisco's claims are therefore properly brought in this petition.

The determination of whether Francisco is improperly detained requires an examination of two separate provisions in immigration law: 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a). Section 1225(b) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.[9] In contrast, 8 U.S.C. § 1226(a) states only that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." In accordance with that language, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."[10] These two provisions therefore provide for opposite outcomes: under § 1225(b) Francisco may not receive a bond hearing, but under § 1226(a) he must receive such a hearing. The Court therefore examines each statute to determine which applies to Francisco.

Turning first to 8 U.S.C. § 1225, as the United States Court of Appeals for the Second Circuit recently observed, to trigger § 1225(b)(2)(A), an individual must be (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond

---

[8]    *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025).
[9]    8 U.S.C. § 1225(b)(2)(A).
[10]   *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

a doubt entitled to be admitted.[11] Consequently, "Section 1225(b)(2)(A) . . . applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'"[12]

Section 1225 defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."[13] While applicable federal law does not define "alien seeking admission," courts construe the plain language of "seeking admission" to describe "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry."[14]

Courts have observed that such a "reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*,"[15] wherein the Supreme Court "noted [that] § 1225(b) applies primarily to aliens seeking entry into the United States."[16] That reading of "seeking admission" further "preserves a distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase

---

[11] *Cunha v. Freden*, __ F.3d __, __, No. 25-3141-PR, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026)).

[12] *Id.*

[13] 8 U.S.C. § 1225(a)(1).

[14] *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025) (collecting cases).

[15] *Id.*

[16] *Jennings*, 583 U.S. at 297.

carries independent meaning."[17] In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country.

With respect to § 1226(a), the Supreme Court has been explicit that "§ 1226 applies to aliens already present in the United States."[18] That Section "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings" and "permit[ting] the Attorney General to release those aliens on bond."[19] Therefore, while § 1225(b) applies to individuals detained while entering or attempting to enter the country, § 1226(a) applies generally to those who are detained within the country.[20]

These definitions create dual tracks: if an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225(b). If they are arrested after having already entered the country, they are subject to detention under § 1226(a) and are entitled to a bond hearing.

---

[17]  *Ramirez-Montoya*, 2025 WL 3709045, at *4.
[18]  *Jennings*, 583 U.S. at 303.
[19]  *Id.*
[20]  *See Cunha*, __ F.3d at __, 2026 WL 1146044 at *5-6 ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission" while "Section 1225(b)(2) . . . applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization").

Applying that distinction here, Francisco must be detained pursuant to § 1226(a) and is therefore entitled to a bond hearing. Francisco entered the United States in August of 2024 and, at that time, he could reasonably have been construed as seeking admission and therefore as an individual governed by § 1225(b).[21] However, he was not arrested and detained until February of 2026[22] after having resided "in the United States for an extended period of time"; accordingly he is no longer seeking admission and "§ 1226(a), not § 1225(b)(2)(A), applies to" Francisco during his detention.[23] Because § 1226(a) applies, mandatory detention is not warranted, and he must be provided with a bond hearing.[24]

The Government argues that Francisco is nevertheless properly detained under § 1225(b) because he was initially granted parole.[25] Due to that parole, the Government argues, Francisco is classified as an "arriving alien" who should be treated as having effectively remained at the border during the duration of his parole.[26] The Court rejects the Government's argument.

Title 8 of the United States Code at Section 1225(b)(1)(A) mandates the immediate removal of certain individuals from the country and provides for

---

[21]  Doc. 5-2 at 4.
[22]  *Id.* at 3.
[23]  *Ramirez-Montoya*, 2025 WL 3709045, at *5.
[24]  *See, e.g., Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (finding in similar circumstances that § 1226(a) applies).
[25]  Doc. 5 at 13-18.
[26]  *Id.*

mandatory detention pending that removal.[27] Subsection (i) applies to any "alien . . . who is arriving in the United States." As discussed above, it is clear that Francisco is an applicant for admission, and his earlier parole does not change this fact.[28]

The Court must therefore determine whether Francisco is an alien "arriving in the United States," a term that is not defined by statute. "Interpreting that phrase is not difficult; it has been elucidated by recent careful opinions addressing the same question."[29] "'Arrive' means 'to reach a destination' or 'to make an appearance'" and, therefore, "someone arriving in the United States is someone who has reached the border or a port of entry."[30] "The words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival.'"[31]

Applying that definition to Francisco, he cannot be considered an individual "arriving in the United States." Rather, he already "arrived, was paroled, entered,

---

[27]  8 U.S.C. § 1225(b)(1)(A).

[28]  *See* 8 U.S.C.A. § 1182(b)(5)(A) ("such parole of such alien shall not be regarded as an admission of the alien" and, following the expiration or termination of the parole, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").

[29]  *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025).

[30]  *Id.* (quoting Merriam-Webster's Collegiate Dictionary (1996)).

[31]  *Id.* (quoting *Rodriguez-Acurio v. Almodovar*, __ F.Supp.3d. __, __, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *20 (E.D.N.Y. Nov. 28, 2025).

and has now been present in the United States for" nearly two years.[32] "It would try any plain understanding of the term arrival to classify an individual like" Francisco —who has lived within the United States for an extended duration—as an arriving alien, notwithstanding his previous parole.[33]

Nor does Francisco fall within § 1225(b)(1)(A)(iii), which applies to anyone "who has not been admitted or paroled into the United States, and who has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." This does not apply because "[t]he phrase 'who has not been paroled into the United States' exempts noncitizens who are both presently on parole and those who were paroled in the past."[34]

Stated differently, "'the statutory text does not read that a noncitizen is eligible for expedited removal if that person 'is not currently on parole.' Instead, it ties the ability to be designated for expedited removal to whether the noncitizen 'has not been paroled.'"[35] Under that plain language, "whether a noncitizen's parole is active, or has expired or been terminated, does not matter."[36] Here, Francisco was previously paroled, and he therefore falls outside the ambit of § 1225(b)(1)(A)(iii).[37]

---

[32]   *Id.*

[33]   *Id.* The regulation that defines "arriving alien" does not change this outcome, for the reasons explained by the court in *Qasemi*. *See id.*

[34]   *Id.* at *8 (ellipsis omitted).

[35]   *Id.* (quoting *Rodriguez-Acurio*, 2025 WL 3314420 at *15).

[36]   *Id.* (quoting *Rodriguez-Acurio*, 2025 WL 3314420 at *15).

[37]   Doc. 5-2 at 4.

Because Francisco's status as a former parolee does not render him subject to the mandatory detention language contained in § 1225, such status does not alter the fact that he is entitled to a bond hearing pursuant to § 1226.

## B.    Due Process

Having determined that Francisco is being detained under the wrong section of immigration law and is improperly being denied a bond hearing, the Court must next determine whether Respondents' actions violate Francisco's Fifth Amendment Due Process rights.

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property without due process of law." That Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,"[38] and therefore individuals "facing removal are entitled to due process."[39]

This Court applies the balancing test developed in *Mathews v. Eldridge*[40] to determine whether the failure to provide Francisco with a bond hearing under § 1226(a) violates his due process rights.[41] Under that test, courts must consider

> three distinct factors: First, the private interest that will be affected by
> the official action; second, the risk of an erroneous deprivation of such

---

[38]    *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).
[39]    *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001).
[40]    424 U.S. 319, 335 (1976).
[41]    *Cf. Sewak v. I.N.S.*, 900 F.2d 667, 674 (3d Cir. 1990) (applying that test to determine whether applicable deportation regulations were capable of protecting an individual's due process rights).

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[42]

The first factor weighs heavily in favor of concluding that Respondents' actions have deprived Francisco of his due process rights, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."[43] The second factor likewise favors Francisco, since "he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."[44]

Finally, as other courts have observed, the Government does have an interest in detaining noncitizens to ensure "'the appearance of aliens at future immigration proceedings' and 'prevent[] danger to the community.'"[45] These interests certainly justify detaining individuals in appropriate circumstances. But they cannot weigh in favor of Respondents when they are denying wholesale a bond hearing—the very purposes of which is to establish whether an individual "poses [a] flight risk [or a]

---

[42] *Mathews*, 424 U.S. at 335.

[43] *Zadvydas*, 533 U.S. at 690. *See also Patel*, 2025 WL 3516865, at *6; *Ramirez-Montoya*, 2025 WL 3709045, at *6.

[44] *Patel*, 2025 WL 3516865, at *6 (quoting *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025)).

[45] *Soto*, 2025 WL 2976572, at *8 (quoting *Zadvydas*, 533 U.S. at 690).

danger to the community."[46] In balancing these three factors then, it is clear that Francisco's continued detention without a bond hearing violates his due process rights. Consequently, the Court will grant his § 2241 petition.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Respondents have violated Francisco's due process rights by detaining him without a bond hearing. Accordingly, his petition will be granted, and the Government will be required to provide Francisco with a bond hearing or release him from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[46]    *Ramirez-Montoya*, 2025 WL 3709045, at *4 (internal quotation marks omitted).