**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERTILUS FRANCISCO,<br><br>Petitioner,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY/IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Respondents. | No. 4:26-CV-01254<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 31, 2026**

## I. BACKGROUND

Gertilus Francisco ("Petitioner"), currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), entered the United States of America on August 1, 2024, and was initially paroled into the country.[1] Petitioner was arrested by ICE outside of his home on February 19, 2026, and has remained in custody since that date.[2]

Petitioner first filed a 28 U.S.C. § 2241 petition seeking release from custody or a bond hearing, asserting that his continued detention without a bond hearing violated his constitutional rights.[3] The Court granted that motion, ordering

---

1 Doc. 5-2 at 2, 4.
2 *Id.* at 3, Doc. 1 at 7; Doc. 9.
3 Doc. 1.

Respondents to either release Petitioner or provide him with an individualized bond hearing where the rationale for any denial of bond needed to be explained in detail on the record beyond simply stating that Petitioner was a danger or flight risk.[4]

Petitioner received a bond hearing on June 10, 2026, in front of Immigration Judge ("IJ") Michael O'Neal.[5] Petitioner was not represented by counsel and did not submit any evidence.[6] The IJ did not explain to Petitioner that a bond hearing requires Petitioner to show that he is neither a flight risk nor danger, or indeed any of the relevant factors that go into such a determination of either, and informed Petitioner only that this was a hearing on his bond request.[7] The IJ asked a few questions each about Petitioner's asylum application, manner of entry, and Petitioner's family in the United States.[8] The IJ did not ask about, *inter alia*, Petitioner's employment, residence, or criminal record.[9] The IJ asked Petitioner if there was anything he "wish[ed] to tell the court," but did not explain what other information would be helpful to the IJ.[10]

The IJ denied bond, stating that Petitioner had only been in the United States for two years and had "limited ties here," despite Petitioner informing him that Petitioner's sister, uncle, and cousin all resided in the United States and were

---

4 Docs. 6, 7.
5 Doc. 11-1.
6 *Id.* at 2-5.
7 *Id.* at 2.
8 *Id.* at 2-3.
9 *Id.* at 3-4.
10 *Id.*

citizens.[11] The IJ also noted that part of his determination was that it was "really unlikely that [Petitioner] [would] succeed on [his] appeal."[12]

Petitioner filed the instant *pro se* motion to enforce compliance with the Court's prior Order, asserting that his bond hearing was insufficiently individualized to comply with the Court's mandate requiring a hearing comporting with due process.[13] Respondents made no submission in opposition until the Court ordered Respondents to do so,[14] at which time Respondents submitted a brief in opposition and an unverified transcript of the June 10 bond hearing.[15] The motion is ripe for disposition. For the reasons stated below, Petitioner's motion is granted and the Court will order Petitioner's immediate release.

## II. LAW

### A. Jurisdiction

Respondents first argue that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[16] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[17]

---

11 Doc. 11-1 at 3, 4.
12 *Id.* at 4.
13 Doc. 9.
14 Doc. 10.
15 Docs. 11, 11-1.
16 Doc. 11 at 3.
17 8 U.S.C. § 1126(e).

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[18] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[19]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[20] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[21]

Here, Petitioner asserts that his hearing failed to comply with the Court's order mandating that Petitioner receive a bond hearing in line with fundamental notions of due process.[22] These arguments are excepted from § 1226(e)'s bar on review of bond determinations, as the Court is not divested of jurisdiction to consider whether the

---

18 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

19 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

20 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

21 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

22 Doc. 9.

bond hearing complied with the Court's own order and whether it was fundamentally fair.[23] Therefore, Respondents' jurisdictional arguments fail.

Respondents additionally assert that Petitioner has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[24] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[25]

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[26] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond

---

23 *See Ghanem*, 2022 WL 574624, at *2.
24 Doc. 11 at 4-7.
25 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).
26 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[27]

Additionally, to the extent that Petitioner would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondents complied therewith. Accordingly, the Court has jurisdiction to consider Petitioner's motion.

**B. Merits**

Turning to the merits of Petitioner's motion, Petitioner argues that his bond hearing was deficient and, therefore, did not comply with the Court's prior Order nor fundamental notions of due process.[28] Respondents assert that the IJ sufficiently considered Petitioner's circumstances and that the proceeding was not procedurally deficient.

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[29] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[30] "This

---

27 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

28 Doc. 9. Petitioner is *pro se*, and the Court therefore construes Petitioner's motion liberally. Given that Petitioner asserts the hearing failed to comply with the Court's prior Order, and that the prior Order held that Petitioner's due process rights entitled him to a bond hearing, the Court will construe Petitioner's motion as raising arguments both that the hearing failed to comply with the Court's Order for an individualized hearing and that it was procedurally deficient such that it did not provide Petitioner with due process. The two arguments are largely intertwined.

29 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).

30 *Id.* (internal quotation marks omitted).

guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[31] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[32]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[33] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[34] Furthermore, under the tenets of a fundamentally fair hearing including factfinding based upon a record and a meaningful opportunity to present evidence and argument, due process imposes some inherent duty upon the IJ to develop the record where the alien litigant is *pro se*.[35]

---

31 *Id.* (brackets and internal quotation marks omitted).

32 *Id.* (internal quotation marks omitted).

33 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).

34 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).

35 The Third Circuit's guidance on this issue has been less than explicit. However, a series of cases from the Court of Appeals implies that such a duty exists under the due process clause, even if there is no statutory obligation to do so in § 1226. *See, e.g., Garmendia v. A.G.*, 28 F.4th 476, 486 (3d Cir. 2022) (analyzing a due process challenge alleging the IJ failed to appropriately develop the record); *Julney v. Att'y Gen. U.S.* No. 21-2034, 2022 WL 2964799,

at *2 (3d Cir. July 27, 2022) (noting that the Third Circuit "recently linked an IJ's failure to develop the record to a violation of due process" and citing to *Garmendia*); *Espana-Alonzo v. A.G.*, No. 21-1282, 2021 WL 5445994, at *3 (noting that the duty to develop an applicant's testimony "appears to have . . . constitutional bases" and citing affirmatively to the Fourth Circuit's decision in *Quintero v. Garland*, 998 F.3d 612, 623-24 (4th Cir. 2021) which adopted such a duty). However, some opinions from the Third Circuit after *Garmendia* caution that such a duty has not yet been explicitly adopted. *See Bueso v. AG*, No. 25-1989, 2026 WL 2225636, at *2 (3d Cir. Aug. 3, 2026) (noting, in the context of a removal hearing, that the Third Circuit has not yet adopted the broader duty to develop the record set out in *Quintero*, and not deciding the issue because, assuming such a duty existed, the IJ complied therewith); *Tran v. A.G.*, No. 21-2667, 2023 WL 1499573, at *3 n.4 (3d Cir. Feb. 3, 2023) (similar).

In sum, the cases from the Third Circuit addressing the issue either reference approvingly the notion that due process includes a duty to develop the record, or assume the duty exists without explicitly adopting it. *See id.* The Court is therefore satisfied that finding a duty to develop the record exists comports with, or is at least not contrary to, the Third Circuit's jurisprudence on the issue.

Moreover, several other circuits have found inherent in due process a duty held by the IJ to develop the record for *pro se* aliens. *See, e.g., Quintero v. Garland*, 998 F.3d 612, 623-24 (4th Cir. 2021); *Mendoza-Garcia v. Barr*, 918 F.3d 498, 507 (6th Cir. 2019); *Agyeman v. I.N.S.*, 296 F.3d 871, 876 (9th Cir. 2002); *Al Khouri v. Ashcroft*, 362 F.3d 41, 464-65 (8th Cir. 2004); *Arteaga-Ramirez v. Barr*, 954 F.3d 812, 813 (5th Cir. 2020); *cf Pineda-Teruel v. Garland*, 16 F.4th 1216, 1220-21 (7th Cir. 2021) (declining to extend *Quintero* to require IJs to contradict legal theories provided by aliens).

Additionally, even if such a duty has not been adopted explicitly by the Third Circuit, such a duty fits squarely within the due process required for a hearing to be fundamentally fair. The clear benchmarks of due process in these circumstances require the "factfinding based on *a record*" and "the opportunity to make arguments" on one's own behalf. *See Serrano-Alberto*, 859 F.3d at 213. A decision based on a record so minimal as to be essentially no record at all does not align with the pillars of a fundamentally fair hearing. *Id.* Moreover, an opportunity for an alien to present arguments where no explanation is given about the proceeding, such as the standard of proof, the factors involved in the decision, and the information sought by the decisionmaker, is not a meaningful opportunity to present argument or evidence, as the alien would not be aware what information or arguments he should be presenting. *See Julney*, 2022 WL 2964799, at *2 (where the IJ complied with her duty to develop the record by "properly instructing [the petitioner] about the hearing procedures and the relevant legal requirements, [] provid[ing] [the petitioner] a full opportunity to present his case, and [] ask[ing] probative and clarifying questions when necessary."); *see also Tran*, 2023 WL 1499573, at *3 n.4 (noting that, if such a duty exists, the IJ fulfilled the duty by "help[ing] [the petitioner] connect his testimony [to the relevant standard] [and] advisi[ing] [the petitioner] about the type of evidence he could submit in support of his application.").

Therefore, I find that due process imposes some inherent duty on an IJ to develop the record for *pro se* aliens. *See also Shaughnessey v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953) (stating

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[36] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[37] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including, *inter alia*, whether the alien has a fixed address in the United States, the alien's family ties in the United States, and the alien's employment history.[38]

---

that removal proceedings for even illegal aliens must conform with "traditional standards of fairness encompassed in due process of law."); *Dorce v. Garland*, 50 F.4th 207, 224 n.21 (1st Cir. 2022) (Lipez, J., dissenting); *Cham v. A.G.*, 445 F.3d 683, 693 (3d Cir. 2006) (noting in a due process determination that the issue is "not whether the evidence as it stands supports the result reached by the immigration judge and the BIA but instead is whether the original [] hearing was conducted in a fair enough fashion for one to determine that the BIA's decision was based on reasonable, substantial, and probative evidence.") (internal quotation omitted).

36 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

37 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

38 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors are proper considerations in determining dangerousness and risk of flight. *See, e.g., Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov*

Additionally, "[t]o make out a claim for a violation of due process, the applicant must prove a violation of one of the three [key protections], as well as an initial showing of substantial prejudice."[39] "Substantial prejudice can be met by 'showing that the infraction has the *potential* for affecting the outcome of the deportation proceedings.'"[40]

Here, Petitioner's hearing was so deficient as to deprive him of both an individualized and fundamentally fair hearing as required by my prior Order and due process. Petitioner's hearing complied with none of the three "key protections" that the Third Circuit has held are inherent in the Fifth Amendment guarantee to be heard at a meaningful time in a meaningful manner:[41] first, Petitioner did not receive factfinding based on a record, as the IJ failed to fulfil his duty to assist *pro se* litigants to develop the record; second, Petitioner did not receive a meaningful opportunity to be heard because the IJ failed to inform him of the nature of the proceeding; finally, the IJ's decision as rendered was so arbitrary as to deprive Petitioner of an individualized determination. Any of these violations would be individually

*v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026); *Dia v. Mullin*, No. 4:26-CV-01418, 2026 WL 1708513, at *5 n.54 (M.D. Pa. June 12, 2026) (Brann, J.).

39 *Julney*, 2022 WL 2964799, at *2 (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)).

40 *Id.* (quoting *Serrano-Alberto*, 859 F.3d at 213) (emphasis in original)).

41 *Serrano-Alberto*, 859 F.3d at 213. As mentioned above, those three key protections are: "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) "an individualized determination of his [or her] interests." *Id.* (internal quotation omitted).

sufficient to render Petitioner's hearing constitutionally deficient. I address each in turn, and then briefly discuss how each deficiency prejudiced Petitioner.

**1. Duty to Develop the Record**

First, the IJ did not properly develop the record as was his duty given Petitioner's *pro se* status.[42] Indeed, the record in this case was so deficient as to be, essentially, no record at all. The substance of Petitioner's hearing is contained in just under two pages of transcript made up of eleven questions, most of which addressed Petitioner's asylum application and appeal.[43] The IJ also asked Petitioner briefly about his family in the United States, and Petitioner informed the IJ that his sister, cousin, and uncle all reside in the United States and are citizens.[44] Upon learning Petitioner's family were citizens, the IJ did not ask any additional questions on the subject, such as where Petitioner's family lived, if he resided with them, or if they would support him.[45]

Indeed, the IJ did not ask Petitioner additional questions on *any* subject which could have potentially assisted Petitioner in meeting his burden of proof, including but not limited to Petitioner's residence and residence history, employment and employment history, criminal history, or manner of entry.[46] Instead, the IJ asked only

---

42 *See supra*, note 35.
43 Doc. 11-1 at 2-4.
44 *Id.*
45 *Id.* at 3-4.
46 *Id.* at 2-4. The Court cannot overstate the deficiency of this proceeding. The IJ did not even ask Petitioner where he was currently living or working. The Court cannot condone such a

if there was "anything else" that Petitioner "wish[ed] to tell the court in regards to [his] bond request."[47] In Petitioner's response, he informed the IJ that he has health issues and sees doctors here, and that he was in school here.[48] The IJ did not follow up on either of these subjects and denied Petitioner's bond, asserting that Petitioner was a flight risk.[49]

Here, the record created at Petitioner's bond hearing was insufficient to meet the due process guarantees of a fundamentally fair hearing.[50] The IJ did not inquire substantively about any of the considerations which the BIA has held are probative to determining risk of flight or danger.[51] Indeed, the IJ's inquiry into Petitioner's family was barely surface level, and did not address the point of the subject, that being how Petitioner's circumstances would relate to Petitioner's danger or risk of flight.[52] The IJ did not even ask Petitioner where he currently lived or worked, nor whether his citizen family members lived near to him.[53] While an IJ must refrain from becoming an advocate, an IJ also has an affirmative duty to ensure that his determination is based upon a record not so devoid of evidence as to render a default

hearing without undoing the underpinnings of the due process guarantees which establish the foundation of constitutional rights.

47 Doc. 11-1 at 4.

48 *Id.*

49 *Id.*

50 Even if the IJ had no duty to assist *pro se* aliens in developing the record, the hearing in this case failed to comply with the requirement that decisionmaking be based on a record because the record was so deficient as to be, in effect, as I noted above, no record at all.

51 *See supra*, note 38.

52 Doc. 11-1 at 3.

53 *Id.* at 2-4.

judgment against the petitioner.[54] Therefore, as the IJ failed in his duty to develop the record, Petitioner was deprived of the due process right to decisionmaking based on a record.

### 2. Meaningful Opportunity to Present Arguments

Next, Petitioner was deprived of a meaningful opportunity to present "arguments on his [] own behalf"[55] because the IJ did not explain the nature of the proceeding to Petitioner such that Petitioner could meaningfully participate *pro se*. The IJ began by noting the "purpose of [the] hearing" was to "hold a bond hearing," and asking Petitioner if he understood that the proceeding was for his "bond request."[56] The IJ did not explain to Petitioner what a "bond hearing" is, did not discuss that the relevant considerations for the hearing were dangerousness or risk of flight, did not explain what evidence would be helpful to those determinations, and did not address whatsoever Petitioner's burden.[57] The IJ technically gave Petitioner an opportunity to be heard by asking Petitioner if he had "anything else [he] wish[ed] to tell the court,"[58] but such an opportunity was meaningless if Petitioner had no way of knowing what information the IJ sought. An IJ must, at a

---

54 *See Serrano-Alberto*, 859 F.3d at 213; *see also U.S. ex rel. Zhelyatdinov v. Ashcroft*, No. 15-3146, 2002 WL 31957526, at *8 (E.D. Pa. Dec. 27, 2002) ("[T]he record must contain, as a matter of due process, at least some evidence to support the decisions of the Immigration Judge") (citing *Garner v. La.*, 368 U.S. 157, 163 (1961)).

55 *Serrano-Alberto*, 859 F.3d at 213.

56 Doc. 11-1 at 2.

57 *Id.* It appears that the IJ did not even inform Petitioner that he held the burden.

58 *Id.* at 4.

minimum, explain to a *pro se* petitioner the hearing's purpose, articulate the relevant legal standards including the burden of proof, and advise the petitioner generally what evidence the petitioner may submit that would assist him in meeting that burden.[59] Accordingly, the IJ's failure to properly situate Petitioner or explain the hearing deprived Petitioner of a meaningful opportunity to present argument and evidence on his own behalf.[60]

### 3. Individualized Determination

Finally, the IJ's determination as to Petitioner did not reflect an individualized analysis of his circumstances.[61] First, the record was so truncated as to render any decision upon it deficient. The IJ did not ask about, and therefore did not consider, among other things, Petitioner's residence, Petitioner's residence history, Petitioner's family's residence, Petitioner's proximity to Petitioner's family, Petitioner's current employment, Petitioner's employment history, Petitioner's criminal history, or Petitioner's manner of entry.[62] These considerations lie at the core of an alien's circumstances; the Court would be hard-pressed to believe that a

---

[59] *See supra*, note 35; *see also Julney*, 2022 WL 2964799, at *2 (where the IJ complied with her duty to develop the record by "properly instructing [the petitioner] about the hearing procedures and the relevant legal requirements"); *Tran*, 2023 WL 1499573, at *3 n.4 (noting that the IJ fulfilled any duty to a *pro se* petitioner by "advisi[ing] [the petitioner] about the type of evidence he could submit in support of his application.").

[60] *See Serrano-Alberto*, 859 F.3d at 213 (noting that due process guarantees an opportunity to be heard "at a meaningful time and in a meaningful manner.") (internal quotation omitted).

[61] While connected to the prior two deficiencies, the lack of an individualized determination does not turn on whether the IJ had a duty to develop the record for Petitioner.

[62] Doc. 11-1 at 2-4.

determination without *any* of these factors could be reflective of an individualized assessment of risk of flight.

Instead, the transcript indicates that likelihood of success on Petitioner's asylum appeal was the IJ's main focus, as almost half the IJ's already limited questioning was devoted to determining the reason for Petitioner's appeal. The IJ did not connect Petitioner's low likelihood of success on his appeal to any specific risk of flight for Petitioner, or examine his appeal in the context of Petitioner's life circumstances, instead relying on the fact of low success in a mechanistic manner.[63] Such a method of evaluation is insufficient to provide due process of law.[64]

The IJ also made offhand reference to Petitioner's short duration in the country and that Petitioner had "limited ties" here. These two considerations, duration in the country and community ties, work in tandem, as the purpose of considering an alien's duration of residence in the jurisdiction is to assess their level of integration into the community and to determine whether they pose a risk of flight from that community.[65] Duration of time in the country should therefore not be

---

63 Doc. 11-1 at 4; *see Santos*, 2020 WL 4530728, at *3. Additionally, while the *Guerra* factors are not the only considerations an IJ may use when determining risk of flight, it is informative that likelihood of success is absent from the *Guerra* factors entirely. *See supra*, note 38. The Court views likelihood of success on the merits as minimally probative for risk of flight, if probative at all. Such a consideration is certainly not so reflective of flight risk that the IJ was warranted in rendering a determination of Petitioner's risk of flight based almost entirely upon it.

64 *See Mujica-Marquez v. Hoover*, 4:26-CV-0623, 2026 WL 1483740, at *5 (M.D. Pa. May 27, 2026) (Brann, J.) (citing *U.S. v. Mejias-Mejias*, 771 F. Supp. 3d 688, 693 (D. Md. 2025)).

65 *See id.*

considered in a vacuum and should instead be considered in context of the alien's circumstances.

Here, however, the IJ did not properly analyze Petitioner's community ties. The IJ did not state how he came to the conclusion that Petitioner had "limited ties," and did not address ties nor duration beyond a passing mention in his conclusion.[66] Indeed, the reference to Petitioner's "limited ties" is not supported by evidence in the record, as Petitioner informed the IJ that he had important health care here, that he attended school here, and that his multiple citizen family members lived here.[67] The IJ made no further inquiry about Petitioner's healthcare, his relationship with his family, or where he attended school.[68] Without more on the record from which a proper analysis of Petitioner's community ties and risk of flight could be conducted, a finding that Petitioner had "limited ties" therefore reflects, at best, a boilerplate conclusion rather than an individualized analysis based on Petitioner's circumstances.

While there are no set factors an IJ must consider in every hearing, an individualized hearing requires, at a minimum, an IJ to consider some basic facts about Petitioner's life and circumstances in this country. Indeed, it is this Court's duty to ensure that bond hearings do not become "rubber-stamp" proceedings.[69]

---

66 Doc. 11-1 at 2-4.
67 *Id.*
68 *Id.*
69 *Zheng*, 826 F. Supp. 3d at 555.

Because the IJ made no meaningful assessment of Petitioner's circumstances before asserting that he was a flight risk, the IJ's determination was therefore insufficiently individualized to Petitioner to provide due process of law or to comply with the Court's prior Order.

**4. Prejudice**

As Petitioner's hearing failed to comply with any of the three key protections, the Court must now analyze whether such deficiencies resulted in substantial prejudice to Petitioner.[70] At Petitioner's hearing, there was an insufficient record, no meaningful opportunity for Petitioner to present arguments, and no individualized determination made regarding Petitioner's circumstances. Each of these deficiencies is the sort that changes entirely the composition of the proceeding. For instance, had the record been fully developed or Petitioner been given a meaningful opportunity to present argument, any facts revealed could have assisted Petitioner in meeting his burden of proof. Similarly, and most obviously, an individualized analysis of Petitioner's circumstances could have led to a very different determination than the boilerplate conclusion that he was a flight risk. Therefore, each deficiency had, at the very least, potential to affect the outcome of the hearing, and the prejudice requirement is met.[71]

---

[70] *See supra*, notes 38-39.
[71] *See Julney*, 2022 WL 2964799, at *2 (citing *Serrano-Alberto*, 859 F.3d at 213).

### C. Remedy

Having concluded that Petitioner's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what remedy is appropriate. Respondents have "now violated Petitioner's due process rights twice: first when they initially detained him unlawfully [], and then again when they deprived him of a constitutionally adequate bond hearing."[72] Petitioner has already been detained for six months.[73] Thus, "release is the only just remedy."[74] The Court therefore finds that the appropriate remedy in this matter is to direct that Respondents release Petitioner from custody.

## III. CONCLUSION

Fore the aforementioned reasons, Petitioner's motion to enforce the judgment will be granted, and he will be ordered released from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

72 *Zheng*, 826 F. Supp. 3d at 560.
73 Doc. 5-2 at 3.
74 *Zheng*, 826 F. Supp. 3d at 563; *see Mujica-Marquez*, 2026 WL 1483740, at *5; *Magatte v. Lowe*, No. 4:26-CV-00597, 2026 WL 1454116, at *4 (M.D. Pa. May 22, 2026).